**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JOHNATHAN JOHNSON,
                        Plaintiff,

    v.                                       No. 11-CV-386
                                              (GLS/CFH)

TRUDY LYNN-CARON, Correction Counselor,
Upstate Correctional Facility,

                        Defendant.

---

**APPEARANCES:**                     **OF COUNSEL:**

JOHNATHAN JOHNSON
89-A-1042
Plaintiff Pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953


HON. ERIC T. SCHNEIDERMAN       ADRIENNE J. KERWIN, ESQ.
Attorney General for the                   Assistant Attorney General
  State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## AMENDED[1] REPORT-RECOMMENDATION AND ORDER[2]

---

[1] Plaintiff pro se Johnathan Johnson's motion for a judgment of civil contempt was assigned with "Dkt. No. 84." However, the report-recommendation originally referred to Johnson's motion as "Dkt. No. 82" in its recommendation section. Accordingly, an amended report-recommendation has been issued which modifies the recommendation section to reflect the proper docket number.

[2] These matters were referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Plaintiff pro se Johnathan Johnson ("Johnson"), an inmate in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendant Trudy Lynn-Caron ("Lynn-Caron"),[3] a DOCCS correction counselor, violated his constitutional rights under the Eighth Amendment. Compl. (Dkt. No. 1). Presently pending is Lynn-Caron's motion for summary judgment pursuant to Fed. R. Civ. P. 56 and Johnson's motion for a judgment of civil contempt. Dkt. Nos. 84, 87. Johnson opposes Lynn-Caron's motion. Dkt. No. 91. For the following reasons, it is recommended that Lynn-Caron's motion be granted and Johnson's motion be denied.

## I. Background

By Decision and Order dated December 22, 2011, defendants Fischer, LeClaire, and Knapp-David were dismissed from this action. Dkt. No. 17 at 7. The facts discussed will be those relevant to the claims herein remaining against defendant Lynn-Caron and are related in the light most favorable to Johnson as the non-moving party. See subsection II(A) infra. At all relevant times, Johnson was an inmate at the Upstate Correctional Facility ("Upstate").

The facts surrounding the inmate-on-inmate assault that is central to this action are undisputed.[4] Johnson has been an inmate at Upstate since 2006. Compl. ¶ 6(2). On

---

[3] Trudy Lynn-Caron's last name is now "Boyea." Def.'s Mem. of Law (Dkt. No. 87-4) at 3 n.1. The former last name is used throughout this Report-Recommendation as defendant was sued under the same.

[4] A video recording shows a physical altercation occurring in the holding-pen between two inmates. See DVD (Dkt. No. 89) (marked as Exhibit D). Three inmates were in the holding-pen and one inmate entered. Id. One of the three inmates stepped his legs over his cuffed hands while the newly entered inmate, who remained handcuffed the entire

January 7, 2011, at approximately 9:00 a.m., non-party Officer Bouchey escorted Inmate Small to a holding-pen. Dkt. No. 87-2 at 71 (misbehavior report). Small is a gang member and Johnson's enemy. Compl. ¶ 6(1). Johnson testified that he was in the holding-pen with two other inmates when Small entered. Johnson Dep. (Dkt. No. 87-2 at 4–65) at 38:4–7.[5] As soon as Small entered the holding-pen, he charged at Johnson. Id. at 38:9. Johnson moved his handcuffs from the back to the front, struck Small's mouth, and slammed Small towards the front of the holding-pen. Id. at 38:10–13; see Dkt. No. 87-2 at 71. Johnson was given a direct order to stop fighting, which he refused until the area supervisor was notified and arrived at the holding-pen.[6] Johnson Dep. at 38:13–18; Dkt. No. 87-2 at 71. As a result of this altercation, Johnson experienced difficulty in moving his shoulder and emotional distress. Johnson Dep. at 53:7–10, 54:4–6. Johnson asked for medical attention but was denied.[7] Id. at 53:16–54:1. Johnson seeks compensatory and punitive damages and a facility transfer out of Upstate. Compl. ¶ 6(3).

Johnson has engaged in other gang-related altercations with enemy inmates. Johnson

---

time, charged at him. Id. Both inmates became entangled in one corner of the holding-pen. Id.

[5] The page numbers following "Johnson Dep." refer to the pagination of the header numbers generated by CM/ECF, not the individual transcripts.

[6] A Fight Investigation Form indicates that both Johnson and Small refused medical attention, protection, photos to be taken, and to provide statements or press charges. Dkt. No. 87-2 at 73. A Tier III disciplinary hearing was held on January 18, 2011, during which Johnson was found guilty of violent conduct, fighting, and refusing a direct order. Id. at 75.

[7] Specifically, with respect to the January 7, 2011 fight, Johnson attested, "I had a shoulder injury that I didn't even know until after that incident had happened with . . . when I got to my cell, my shoulder was all red and I couldn't even move it." Johnson Dep. at 53:7–10.

3

submitted to the Court a superintendent's decision indicating that, as a result of a physical altercation that took place on November 21, 2007 involving Johnson and an unidentified inmate, the unidentified inmate was listed on Johnson's separatee list.[8] Dkt. No. 91-4 at 3. One fight occurred in 2008 when Johnson threw an inmate off a bus.[9] Johnson Dep. at 41:2–7; Dkt. No. 91-4 at 22, 24. Another fight occurred in the same year when Johnson threw an inmate down a flight of stairs. Johnson Dep. at 42:16–43:1.[10] These threats incited fear in Johnson.[11] Id. at 46:20–47:5.

Johnson met Lynn-Caron when Lynn-Caron began working at Upstate some time in 2007 as Johnson's counselor. Johnson Dep. at 16:22–17:2. Johnson advised Lynn-Caron in 2008 and 2011 that while his sister and brother-in-law were visiting him, enemy gang members had threatened them. Id. at 19:10–19; Compl. ¶ 6(5). Johnson knew this

---

[8] The DOCCS "IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response; and (3) appeal to the CORC [Central Office Review Committee] . . . within four working days of receipt of the superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

[9] In a decision dated July 2, 2008, CORC concluded there was insufficient evidence to substantiate Johnson's allegation that another inmate had threatened him as Johnson could not identify his potential the inmate by name. Dkt. No. 91-4 at 19.

[10] Other altercations include one fight in August 2012, on a bus, when Johnson spitted on an enemy gang member and another incident where Inmate Reeder threw feces at him as part of gang initiation. Johnson Dep. at 43:9–45:20.

[11] Johnson attempted to allege a potential Eighth Amendment claim based on his fear of being assaulted. According to Johnson, the gang members told him that "they were out to get [him]." Johnson Dep. at 33:4–13. However, "fear of assault does not constitute a sufficiently serious injury to state a claim under the Eighth Amendment." Roseboro v. Gillespie, 791 F. Supp. 2d 353, 383 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). Therefore, Johnson cannot establish an Eighth Amendment claim against Lynn-Caron based on this ground.

because his sister advised him of the incidents.  Johnson Dep. at 47:15–48:15.  For both incidents, Lynn-Caron advised Johnson to seek assistance from security staff.  Id. at 20:14–18, 23:9–12.

Johnson filed written complaints concerning both 2008 and 2011 incidents but was advised that the prison authorities could not address the problem.[12]  Johnson Dep. at 20:22–25, 22:11–19, 23:13–20.  In further response to the 2011 complaint, the Office of Classification and Movement advised Johnson to speak with his counselor on issues of transferring to another facility.[13]  Id. at 25:10–12.  Johnson made a facility request to Lynn-Caron, to which she replied that she lacked authority to decide.  Id. at 26:2–23, 29:21–25.  Johnson maintains that counselors authorize facility transfers.[14]  Id. at 31:21–24.  Johnson further maintains that Lynn-Caron was aware of the altercation with Small because she was in the building.  Id. at 40:3–11.

Johnson was still housed at Upstate's Special Housing Unit ("SHU")[15] as of October 24,

---

[12]  A memorandum authored by non-party Sergeant Kourofsky, dated May 28, 2008, indicated "[t]his alleged situation [involving Johnson's sister and brother-in-law on May 18, 2008] seems to be a civil matter stemming from the street.  DOCS has no way to control this.  While visiting an inmate at this facility, both inmates and visits are monitored."  Dkt. No. 91-5 at 36.

[13]  A superintendent decision dated May 14, 2007 states that "[t]ransfers are scheduled through the Office of Classification and Movement . . . [a]n investigation reveals that there is no imminent danger to the grievant."  Dkt. No. 91-4 at 8.

[14]  A CORC decision dated June 6, 2007, reviewing the May 14, 2007 superintendent decision, states that Johnson should "address his transfer concerns to his assigned Correction Counselor and to notify area staff of any threats."  Dkt. No. 91-4 at 9.  In addition, a letter dated May 7, 2007, authored by non-party Knapp-David, director of the office of classification and movement, advised Johnson that she could not consider Johnson for a transfer without a referral from the facility staff.  Id. at 11.

[15]  SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general

5

2012 in a single-cell without a cell-mate. Johnson Dep. at 44:12–23, 49:12–14. When Johnson leaves his cell for a call-out, he sees other inmates who are out on the same call-out. Johnson Dep. at 50:14–51:3. Johnson is not isolated from other SHU inmates, only the general population. Id. at 51:5–9. Johnson believes it is Lynn-Caron's job to transfer him out of Upstate because his safety was at issue. Id. at 52:3–9.

According to Lynn-Caron, Upstate's SHU consists of a single-cell, locked down for twenty-fours a day, where the inmate is isolated from both the general and SHU population. Lynn-Caron Aff. (Dkt. No. 87-2 at 66–76) ¶¶ 13–14;[16] see Johnson Dep. at 49:24–50:1. Johnson could only leave his cell during one hour of daily recreation, which takes place in an outdoor holding-pen connected to the back of his cell. Lynn-Caron Aff. ¶¶ 15–16; see Johnson Dep. at 50:3–4. Johnson is alone in the holding-pen during this time. Lynn-Caron Aff. ¶ 16; see Johnson Dep. at 50:5–8. Accompanied by two corrections officers, Johnson may leave his cell for regular visits, legal visits, conference calls, parole board hearings, time-allowance committee meetings, and the infirmary. Lynn-Caron Aff. ¶¶ 17–18.

Lynn-Caron is currently an Offender Rehabilitation Coordinator. Boyea Decl. (Dkt. No.

---

population . . . ." N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

[16] Lynn-Caron provided this affidavit dated January 19, 2011 for purposes of another action, Johnson v. Burge, et al., 07-CV-1237. Dkt. No. 87-2 at 67–69. Johnson contends that this affidavit should not be considered because it contains hearsay, specifically, that Lynn-Caron did not witness the January 7, 2011 attack; thus, she can not testify to facts surrounding the physical altercation. Johnson Resp. (Dkt. No. 91-3) at 17–19. However, Lynn-Caron made her attestation based on a review of DOCS records. Lynn-Caron Aff. ¶ 5. Johnson's challenge to Lynn-Caron's affidavit "goes to the weight of the testimony and not their admissibility." Murphy v. General Elec. Co., 245 F. Supp. 2d 459, 468 (N.D.N.Y. 2003). As such, Lynn-Caron's affidavit will be considered.

6

87-2 at 78) ¶ 1. As of August 6, 2012, Lynn-Caron no longer acted as Johnson's counselor because Johnson was moved to another building within Upstate. Id. ¶ 3. Lynn-Caron explains that the Office of Classification and Movement makes transfer decisions based on SHU and keeplock[17] release dates, medical needs, or security reasons. Id. ¶ 5. Lynn-Caron maintains that as of November 5, 2012, she never found Johnson to be in any danger at Upstate. Id. ¶ 6.

## II. Motion for Summary Judgment

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or

---

[17] "Keeplock" is a form of disciplinary confinement where an inmate is confined in his cell for the duration of the disciplinary sanction. Gittens v. Lefevre, 891 F.2d 38, 39 (2d Cir. 1989) (citing N.Y. COMP. CODES R. & REGS. tit. 7, § 251-1.6 (2012)).

speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247–48.

## B. Discussion

Johnson contends that Lynn-Caron violated his Eighth Amendment right to be free from the January 7, 2011 inmate assault by failing to refer him for a prison facility transfer. Lynn-Caron seeks dismissal because Johnson's Eighth Amendment claim is without merit.

### 1. Physical Injury Requirement

Lynn-Caron contends that Johnson has failed to establish a physical injury as required by the Prison Litigation Reform Act ("PLRA") of 1995. Def.'s Mem. of Law (Dkt. No. 87-4) at 5 n.3. Section 1997e(e) of the PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Because this physical injury requirement operates as "a limitation on recovery of damages for mental and emotional injury in the absence of a showing of physical injury, it does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002).

Here, Johnson neither asserts in his complaint nor his response to Lynn-Caron's motion that he suffered from any physical injuries as a result of the January 7, 2011 altercation. While Johnson indicated that after the altercation, he experienced shoulder movement difficulties and redness, this information surfaced as a mere afterthought and there is no allegation that this difficulty was either beyond temporary or coincided with severe physical pain. Despite the factual dispute as to whether Johnson sought medical attention after the altercation, district courts in this Circuit have found repeated punching that results in

9

"superficial and temporary irritations or abrasions" do not constitute physical injuries under the PLRA. McCloud v. Tureglio, No. 07-CV-0650, 2008 WL 1772305, at *8 (N.D.N.Y. Apr. 15, 2008) (collecting cases).[18] Further, despite Johnson's conclusory and unsubstantiated allegation during his deposition, Johnson does not assert, nor does the record reflect, that his shoulder injury was beyond de minimis. Abdur-Raqiyb v. Erie Cnty. Medical Ctr., 536 F. Supp. 2d 299, 304 (W.D.N.Y. 2008) (citation omitted) (noting that de minimis physical injuries, such as being administered medicine that elevated the plaintiff's blood pressure, are insufficient to meet the PLRA physical requirement threshold). Therefore, given that Johnson has failed to satisfy the PLRA physical requirement, Johnson cannot proceed to recover damages for emotional distress or actual injury against Lynn-Caron.

Accordingly, Lynn-Caron's motion on this ground should be granted.

### 2. Failure to Protect

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. "[P]rison officials [are] to take reasonable measures to guarantee the safety of inmates in their custody." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 832–33 (1970)). The Eighth Amendment prohibition obliges corrections officers to protect inmates from known harms caused by other inmates. Farmer, 511 U.S. at 833–34; Hendricks v. Coughlin, 942 F.2d 109, 113 (2d Cir. 1991). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for

---

[18] All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

prison officials responsible for the victim's safety." Id. at 834.

As with other Eighth Amendment claims, in a failure to protect context, a "plaintiff must satisfy both an objective . . . and subjective test." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). To state a cognizable failure to protect claim, the plaintiff must "demonstrate that 1) he was incarcerated under conditions posing a substantial risk of serious harm, and that 2) prison officials exhibited deliberate indifference to the inmate's plight." Murray v. Goord, 668 F. Supp. 2d 344, 357 (N.D.N.Y. 2009) (citing Farmer, 511 U.S. at 834, Matthews v. Armitage, 36 F. Supp. 2d 121, 124–25 (N.D.N.Y. 1999), Coronado v. LeFevre, 886 F. Supp. 220, 224 (N.D.N.Y. 1995)).

To satisfy the objective prong, "the plaintiff must prove that an alleged deprivation is "sufficiently serious" such that it denied him or her the "minimal civilized measure of life's necessities." Murray, 668 F. Supp. 2d at 357–58 (citing Dawes v. Walker, 239 F.3d 489, 493–94 (2d Cir. 2001), overruled on other grounds, sub nom. Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)). As for the subjective prong, "a prison official acts with deliberate indifference . . . if he has knowledge that an inmate faces a substantial risk of serious harm and . . . disregards that risk by failing to take reasonable measures to abate the harm." Blaylock v. Borden, 547 F. Supp. 2d 305, 310 (S.D.N.Y. 2008). The plaintiff may make a showing by establishing that "a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." Murray, 668 F. Supp. 2d at 359 (citation omitted).

In this case, Johnson's Eighth Amendment claim against Lynn-Caron fails for several

11

reasons. Turning first to the objective prong of the test, as previously discussed, Johnson could not show that he sustained any actual physical harm from the altercation. See, e.g., Parker v. Peek-Co, No. 06-CV-1268 (GLS/DEP), 2009 WL 211371, at *6 (N.D.N.Y. Jan. 27, 2009) (concluding that de minimis injury resulting from a fight negates a finding that defendant exposed him to a substantial risk of serious harm); Dolberry v. Levine, 567 F. Supp. 2d 413, 418 (W.D.N.Y. 2008) (dismissing a failure to protect claim where the plaintiff failed to proffer evidence showing he was subjected to any physical harm). Further, during the altercation, Johnson "maintained the upper hand" as Johnson was able to strike Small, who was handcuffed behind his back.[19] Gillard v. Hamel, No. 09-CV-0431, 2012 WL 967064, at *8 (N.D.N.Y.), adopted by 2012 WL 960967 (N.D.N.Y. Mar. 21, 2012). Thus, it cannot be said that Johnson was subjected to conditions posing a substantial risk of serious harm. Murray, 668 F. Supp. 2d at 357.

Next, Johnson also fails to satisfy the subjective prong of the Eighth Amendment analysis. Johnson contends that he advised Lynn-Caron of three gang-related incidents between 2008 and 2011, only one of which resulted in a physical altercation involving him.[20] However, aside from Johnson's conclusory allegations with regards to advising Lynn-Caron of the threats, there is nothing in the record substantiating such contentions. Additionally,

---

[19] During his Tier III disciplinary hearing for January 7, 2011 incident, while reviewing the video recording of the incident, Johnson stated, "[l]ook at that . . . he is crying, I beat the shit out of him, he's crying. . . . (Laughing) . . . they said let him go, he was screaming like a little girl." Dkt. No. 91-6 at 63.

[20] In his response, Johnson contends that he advised Lynn-Caron on more than three occasions that he was subjected to gang-violence at Upstate. Johnson Resp. at 6. However, this conclusory assertion remains unsubstantiated by the documentation that Johnson had submitted to the Court. See Dkt. No. 91-4 at 15.

12

from 2006 through January 7, 2011, Johnson has reported only four gang-related altercations at Upstate. This number of incidents is far removed from what has been found to be a longstanding and pervasive history of gang-related incidents satisfying the subjective prong. See, e.g., Warren v. Goord, 579 F. Supp. 2d 488, 496 (S.D.N.Y. 2008) (finding evidence showed a history of inmate-on-inmate violence when there were thirty-seven incidents within the span of four years).

Further, there is no allegation or record evidence indicating that Johnson and Small had prior physical contacts, Lynn-Caron knew that Small was one of Johnson's enemies, or Johnson and Small were to be placed in the same holding-pen. See Rivera v. New York, No. 96-CV-7697 (RWS), 1999 WL 13240, at *9 (S.D.N.Y. Jan. 12, 1999) ("communicating vague concerns of future assault by unknown individuals [is] not sufficient to impose liability on an officer who fails to protect an inmate"). In fact, it is Johnson's contention that Lynn-Caron learned of the January 7, 2011 physical altercation only because she was in the building where the altercation took place. Thus, Johnson cannot satisfy the subjective prong either through a pervasive history of gang-related incidents or a history with Small specifically.

Moreover, Johnson must show that Lynn-Caron actually inferred from his complaints that a substantial risk of serious harm existed and failed to take reasonable steps to abate the harm, both of which she repeatedly denied. Farmer, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). For these reasons, a reasonable factfinder could not find in favor of Johnson. Gallo, 22 F.3d at 1223–24.

Accordingly, Lynn-Caron's motion on this claim should be granted.

### III. Motion for a Judgment of Civil Contempt

Johnson moves to hold defense counsel in contempt, asserting that defense counsel failed to respond to his motion to vacate the order dismissing certain defendants from this action. Dkt. Nos. 82 (motion to vacate); 84 at 3 (motion for a judgment of civil contempt). Johnson requests that the Court grants his motion to vacate. Dkt. No. 84 at 4. Defense counsel did not respond to Johnson's motion.

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." In re Martin-Trigona, 732 F.2d 170, 173 (2d Cir. 1984) (quoting Shillitani v. United States, 384 U.S. 364, 370 (1966)); see also 18 U.S.C. § 401(3). "The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged. Such sanctions may not be imposed as purely punitive . . . ." Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc., 369 F.3d 645, 658 (2d Cir. 2004) (citations omitted); see also United States v. United Mine Workers of America, 330 U.S. 258, 303–04 (1947) (same). "A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." Paramedics Electromedicina Comercial, Ltda., 369 F.3d at 655 (internal quotation marks and citations omitted).

Johnson's motion must be denied. This District's Local Rules provide that "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested herein, the non-moving party's failure to file or serve any papers . . . shall be deemed as consent to the granting or denial

of the motion . . . ." N.D.N.Y.L.R. 7.1(b)3. Johnson's motion to vacate is dated November 12, 2012 and filed with the Court on November 15, 2012. Dkt. No. 82. The Court notified Lynn-Caron of her opposition motion deadline of December 5, 2012. Text Notice dated 11/15/2012. The response deadline passed and Lynn-Caron does not oppose Johnson's motion. While the setting of the December 5, 2012 response deadline provided Lynn-Caron an opportunity to file opposition papers, it is not a clear and unambiguous order mandating the filing of such papers. Paramedics Electromedicina Comercial, Ltda., 369 F.3d at 655. Lynn-Caron's failure to respond only translates to her consent to the Court's decision on Johnson's motion to vacate. Given the absence of a court order mandating Lynn-Caron to respond to Johnson's motion to vacate, the Court must deny Johnson's motion for a judgment of civil contempt against Lynn-Caron.

Accordingly, Johnson's motion should be denied.

### IV. Conclusion

For the reasons stated above, it is hereby:

1. **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 87) be **GRANTED**; AND

2. Further **RECOMMENDED** that Johnson's motion for a judgment of civil contempt (Dkt. No. 84) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN**

**FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: June 17, 2013
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge